IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| DEBRA DICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 5:06CV00104 |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| H.P. HOOD, LLC, | ) |
| | ) By: Hon. Glen E. Conrad |
| Defendant. | ) United States District Judge |

Debra Dick brings this action against H.P. Hood, LLC ("Hood"), pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. The plaintiff alleges that her employment was terminated by the defendant due to age and gender discrimination. The case was transferred from the Alexandria Division in the Eastern District of Virginia on October 26, 2006, and is currently before the court on the defendant's motion for summary judgment. For the reasons stated in this memorandum opinion, the court will deny the defendant's motion for summary judgment.

## BACKGROUND

This case arises out of the termination of the employment of the plaintiff, Debra Dick. Dick was an employee of Hood, a dairy operator with a facility in Winchester, Virginia. The plaintiff was hired in June of 2000 to work at the Winchester facility as a Production Coordinator. The plaintiff supervised approximately ten employees per shift on teams P2 and P3.

The Hood Employee Guidebook provides for a scheme of progressive discipline. In December of 2003, the plaintiff was given a Verbal Warning, which was followed by a Written Warning in February of 2004. On May 6, 2004, the plaintiff was given a Final Warning and one-day suspension. The Final Warning stated "[a]ny Employee who receives three corrective action steps (Counseling,

Written Warning, or Final Warning) in a rolling one-year period of time will receive a Final Warning for Multiple Violations. A fourth corrective action step in the subsequent 12 months (excluding LOA time) will result in termination." Resp. in Supp. of Mot. for Summ. J., Ex. 12. Shortly after, on June 3, 2004, there were several quality issues in the plaintiff's lines, and the plaintiff could not be found during the situation. During the same period of time, the plaintiff was receiving some positive evaluations of her job performance.

On July 12, 2004, the plaintiff's employment was terminated. The plaintiff's position was offered to "existing qualified employees," according to the defendant. A younger male was given the plaintiff's position.

The plaintiff filed this suit on May 31, 2006, and the case was transferred to this court in October of 2006. The defendant filed a motion for summary judgment on February 15, 2007; a hearing on the motions was held on May 22, 2007. At the hearing, the parties were granted additional time to file supplemental materials in support of their positions.

## STANDARD OF REVIEW

The case is before the court on the defendant's motion for summary judgment. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is appropriate "only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law ...." Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (internal quotations omitted). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although a court must use special care in granting a motion for

2

summary judgment in a discrimination case, because motive is often the critical issue, "summary judgment ... remains appropriate if the plaintiff cannot prevail as a matter of law." Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 958-59 (4th Cir. 1996).

In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 763 F.2d 604, 610 (4th Cir. 1985). Furthermore, the court must draw any permissible inference from the facts in the light most favorable to the non-moving party. Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992) (internal citation omitted).

## DISCUSSION

The plaintiff claims that she was terminated due to intentional age and gender discrimination, in violation of ADEA and Title VII. A plaintiff may defeat a motion for summary judgment and establish a claim for intentional discrimination through either the "mixed-motive"[1] or "pretext" methods of proof. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc). Using the mixed-motive method, a plaintiff can establish a claim of discrimination by showing that discrimination was a motivating factor in the employer's employment decision. Id. The plaintiff may use either direct or circumstantial evidence, and need not show that discrimination was the sole motivating factor. Id.

Alternatively, a plaintiff can use the pretext framework to establish a case of discrimination, as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The McDonnell Douglas method of proof has three steps, although the burden of persuasion always remains with the plaintiff. Tuck, 973 F.2d at 375. First, the plaintiff must establish a prima facie case of discrimination. Id. The plaintiff must show: (1) that she is a member of the protected group; (2) that she was subject to an

---

[1] It appears as if the parties are proceeding according to the pretext framework.

3

adverse employment action; (3) that at the time of discharge or demotion she was performing her job at a level that met her employer's legitimate expectations; and (4) that the position remained open or was filled by similarly qualified applicants outside the protected class. Hill, 354 F.3d at 285. This showing creates an inference of discrimination; the employer can rebut a prima facie case by presenting legitimate, non-discriminatory reasons for the termination. Tuck, 973 F.2d at 375. If the employee can show by a preponderance of the evidence that the defendant's reasons were a pretext for discrimination, the employee will prevail. Id. As the United States Court of Appeals for the Fourth Circuit has recognized, an employee "must produce direct or circumstantial evidence of a stated purpose to discriminate ... of sufficient probative force to reflect a genuine issue of material fact.... [t]herefore, if the plaintiff offers nothing to disprove the defendant's nondiscriminatory explanations, the explanations' weakness alone is insufficient to create an issue of pretext. Instead, the burden of production returns to the plaintiff to present affirmative evidence of [discriminatory] animus." Burns v. AAF-McQuay, Inc., 96 F.3d 728, 732 (4th Cir. 1996) (internal quotations and citations omitted). To establish that a defendant's proposed reasons are pretextual, the plaintiff must show both that the explanation is untrue and that the real reason for the employment action is unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

I. Prima Facie Case

In order to establish her prima facie case of employment discrimination, the plaintiff must show: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that at the time of the adverse employment action, she was performing her job in a way that met her employer's legitimate expectations; and (4) that the plaintiff was replaced, following her discharge or demotion, by someone of comparable qualifications outside of the protected class. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).

4

The parties do not appear to contest three factors in this analysis. The plaintiff was a 48-year-old female at the time of her termination from Hood on July 12, 2004. Compl. ¶ 19. Furthermore, it is undisputed that the plaintiff's position was filled by a younger male. See Compl. ¶ 18; Def.'s Mot. for Summ. J. 9.

The defendant contends, however, that the plaintiff has failed to show that she was performing her job in a manner that met Hood's legitimate expectations. In support, the defendant refers to the plaintiff's movement through Hood's progressive discipline scheme. In December of 2003, the plaintiff was given a Verbal Warning for Unsatisfactory Work Performance. An accompanying memorandum detailed the plaintiff's specific issues, and stated that there were numerous areas where improvement was necessary. Concerns were also stated in a memo dated February 4, 2004, and in a written warning received by the plaintiff on February 6, 2004. The written warning also stated that "[a]ny further conduct which is classified as Unsatisfactory Work Performance during the warning periods listed below will result in a Suspension Final Warning." Resp. in Supp. of Mot. for Summ. J., Ex. 7.

The plaintiff received an overall performance rating of 1.96 in her annual review in April, 2004. On May 6, 2004, the plaintiff was given a Final Warning and one-day suspension. The Final Warning stated "[a]ny Employee who receives three corrective action steps (Counseling, Written Warning, or Final Warning) in a rolling one-year period of time will receive a Final Warning for Multiple Violations. A fourth corrective action step in the subsequent 12 months (excluding LOA time) will result in termination." Resp. in Supp. of Mot. for Summ. J., Ex. 12. Shortly after, on June 3, 2004, there were several quality issues in the plaintiff's lines, and the plaintiff could not be found during the situation. According to the defendant, these facts show that the plaintiff was not performing her job so as to meet the defendant's legitimate expectations.

5

However, the court concludes that the plaintiff has raised an issue of fact such that she has established her prima facie case for the purposes of summary judgment. The plaintiff has submitted a number of documents demonstrating that she was meeting her employer's reasonable expectations during the period of time before her discharge. For example, the Bi-Weekly Team Meeting Report from April 8, 2004 noted shift efficiency in second place for the month. Supplemental Resp. to Mot. for Summ. J., Ex. The plaintiff's team also had a 100% safety record. Id. The Bi-Weekly Team Meeting Report from April 16 noted shift efficiency in first place for the month of March, and the safety record was again 100%. Id. The report from the Bi-Weekly Coordinator Meeting stated that "Debbie has continued to complete her action item given to her bi-weekly by her shift manager. Debbie has shown good documentation of what was needed to complete her task at hand on her IDP. Debbie maintained 100% on computer base training, drain cleaning, DESC goals and bi-weekly meeting with her team ...." Id. That report also noted concerns about the plaintiff's supervision of her employees. Id. The Coordinator Meeting Report from May 1 noted that "Debbie did well on her IDP within the short time to complete .... I have observed an improvement on her team since taking over in mid February on job performance, and efficiency on her lines." Id. This report also noted ways for the plaintiff to improve her supervision of employees. Id. Also on May 1, Debbie was one of a group receiving a "DairyGram" for "exemplary performance." Id. On May 14, the Bi-Weekly Team Meeting Report stated that the plaintiff's team tied for first place in shift efficiency. Id. The report from the Bi-Weekly Coordinator Meeting of May 15 states that:

> Debbie was well prepared for her IDP .... Debbie [sic] team has the best safety record going back to 2002 with no lost time accident recorded and only 2 near misses recorded since 2002 .... Debbie [sic] communication with her teams in her bi-weekly meetings has also been improving each week. Debbie has been taking control of all schedule downtime and unscheduled downtime .... Talking with her team members ... and many others they said they have notice [sic] a different is [sic] the past several months of

6

> Debbie [sic] improvement in communication and following up on request that were needed ...."

Id. On May 29, the Bi-Weekly Team Meeting Report showed the plaintiff's P3 team in first place; the same report for the P2 team showed that it was tied for first place. Id. Corey Jackson, the director of Human Resources for Hood, stated that he did not recall looking at any materials prepared by Darrell Wright, the plaintiff's supervisor, with respect to the plaintiff's job performance. Id.

Viewing the record in the light most favorable to the plaintiff, and drawing all inferences in her favor, the court concludes that there are issues of fact as to whether the plaintiff was performing her job in a way that met Hood's legitimate expectations. The plaintiff has presented objective evidence, from her supervisor, that she was improving and performing her job in a way that met the expectations of her employer. Unlike in White v. W.R. Winslow Memorial Home, Inc., 211 F.3d 1266 (4th Cir. 2000) (unpublished table decision), a Fourth Circuit case heavily relied upon by the defendant, the evaluations presented by the plaintiff represent much more than the plaintiff's own assessments of her improvement and performance. Cf. Evans, 80 F.3d at 960 (the plaintiff's "unsubstantiated allegations and bald assertions concerning her own qualifications" failed to establish discrimination). Furthermore, it is notable that the plaintiff's evidence goes to her job performance during the several months immediately prior to her discharge. Cf. Johnson v. Gala Industries, Inc., 1996 U.S. Dist. LEXIS 16606 (W.D. Va. 1996) (finding that evidence that did not address the plaintiff's performance in the year immediately prior to his termination failed to prove that he was performing in a way that met his employer's legitimate expectations at the time of discharge). Therefore, the court concludes that the plaintiff has made out a prima facie case of both age and gender discrimination, showing all four factors necessary to create an inference of discrimination.

7

II.  Non-discriminatory Reasons for Termination

Once the plaintiff has established a prima facie case of discrimination, an inference of discrimination is established. The defendant can rebut the inference by showing legitimate and non-discriminatory reasons for the plaintiff's termination. In this case, the defendant alleges that the plaintiff was terminated for poor job performance.

The plaintiff has alleged enough to establish a prima facie case on the basis that she was performing her job so as to meet the legitimate expectations of the defendant. However, the plaintiff also does not dispute that she received disciplinary actions as set forth by Hood's Employee Guidebook. Def.'s Mot. for Summ. J., Ex. 2 ¶¶ 4-16. The Guidebook provides for a progressive discipline structure:

> When, in the discretion of the coordinator, it is necessary to administer formal discipline, a progressive disciplinary or warning process will be followed. This process includes:
> 1. Verbal review between the coordinator and employee that is documented for record purposes.
> 2. Written warning to the employee.
> 3. Suspension of employee where appropriate.
> 4. Discharge....
> Written and suspension warnings will remain active in an employee's file for one year from the date of the disciplinary discussion, unless otherwise noted on the warning.

Def.'s Mot. for Summ. J., Ex. 1, Attach. B. As discussed above, the plaintiff received a verbal warning, a written warning, and a final warning and suspension prior to her discharge.

The defendant has presented evidence that the plaintiff's discharge was based on an incident occurring on June 3, 2004. A member of the senior management observed both the P2 and P3 teams having a number of quality issues, and had to intervene. Resp. in Supp. of Mot. for Summ. J., Ex. 15.

Job performance is clearly recognized as a valid basis for an adverse employment decision. Evans, 80 F.3d at 960. Therefore, based on the facts presented and the admissions of the plaintiff, the

8

court concludes that the defendant has set forth legitimate and nondiscriminatory reasons for the employee's termination.

III. Pretext

As the defendant has met its burden of production, the presumption raised by the plaintiff's prima facie case is rebutted, and the plaintiff must adduce evidence that the defendant's reasons are pretextual and that she has been the victim of discrimination. For the plaintiff to succeed at the summary judgment phase, she "must have evidence from which a reasonable factfinder could conclude that [the defendant] engaged in intentional ... discrimination." Halperin v. Abacus Tech. Corp., 128 F.3d 191, 202 (4th Cir. 1997).

To make this showing, the plaintiff must establish that the employer's explanation for the termination is a pretext for discrimination. Vaughan v. The Metrahealth Co., 145 F.3d 197, 201 (4th Cir. 1998) (citing St. Mary's, 509 U.S. at 515). A reason is not pretextual unless it is shown "both that the reason was false, and that discrimination was the real reason." Id. at 202. Therefore, to survive summary judgment, the plaintiff must have "some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action." Id. The Fourth Circuit has held that "rejection of the legitimate, nondiscriminatory reason proffered by the defendant, coupled with the elements of the prima facie case, may permit the fact-finder to infer the ultimate fact of invidious discrimination with no additional proof of discrimination; however, the plaintiff is not automatically entitled to judgment because the fact-finder may determine that the defendant's challenged conduct is pretextual, but does not constitute invidious discrimination." Jiminez v. Mary Washington Coll., 57 F.3d 369, 378 (4th Cir. 1995).

The court believes that the plaintiff's strongest evidence at this point goes to the defendant's justification of her discharge. The evidence is clearly sufficient that a reasonable factfinder could

9

conclude that the defendant's discharge of the plaintiff was pretextual. As discussed above, the plaintiff was receiving indications from her supervisor, Wright, that she was performing her job so as to meet the defendant's expectations. These reviews were in contrast to the warnings the plaintiff was receiving from other people in management positions, such as Greg Janzow, the Operations Manager. When the plaintiff received her final warning on May 6, 2004, Wright, her supervisor, was not present. This is supported by the deposition testimony of both Jackson and the plaintiff. Supplemental Resp. to Mot. for Summ. J., Ex. Furthermore, Wright did not sign the Final Warning; it was only signed by the plaintiff, Janzow, and Jackson. Resp. in Supp. of Mot. for Summ. J., Ex. 12. Jackson testified that Hood has a standard, although it is not always met, that an employee's supervisor administers a corrective action. Supplemental Resp. to Mot. for Summ. J., Ex. After the plaintiff's final written warning, she continued to receive positive feedback from her supervisor, Wright.

In documentation to the file, Jackson included a timeline for the plaintiff's termination. Id. The timeline began with Janzow informing Wright of the decision to terminate the plaintiff. Id. However, the plaintiff stated in her declaration that Wright did not know that she had been fired until after the termination. Id. Jackson testified in his deposition that he did not recall looking at materials Wright had produced about the plaintiff's job performance before the termination. Id.

In support of her claim of discrimination, the plaintiff has set forth some observations as to Hood's hiring of coordinators. The plaintiff claims that Hood, under the management of Janzow, exhibited a policy prior to her termination of hiring young men to fill the coordinator positions. As a result, the company went from having three female and two male coordinators, in May of 2000, to having fifteen male coordinators younger than 40 and two female coordinators after the plaintiff was

10

terminated in July of 2004.[2] The plaintiff testified at her deposition that she knew of at least two women who applied for coordinator positions who were not selected. Id. At no point has the defendant presented evidence that the plaintiff's representation about this numerical breakdown is incorrect; Jackson testified at his deposition that he could not recall if these figures were accurate. Supplemental Resp. to Mot. for Summ. J., Ex. Although the defendant specifically asserts that the plaintiff's use of statistics to support her claim is improper, the Fourth Circuit has held that "statistics can provide important proof of employment discrimination.... [s]uch evidence may be used to establish an inference of discrimination as an element of plaintiff's prima facie case ... or to demonstrate that an employer's stated nondiscriminatory reason for its action is in reality a pretext." Carter v. Ball, 33 F.3d 450, 456 (4th Cir. 1994). When using this type of evidence, a party may need to have expert testimony as to methodology and relevance to a claim on such evidence, or the statistical evidence could be excluded. Id. at 457. However, the Fourth Circuit has also found that anecdotal evidence, which could be developed into statistical evidence for trial, can be used to create a material dispute as to whether a dismissal is based upon a discriminatory purpose. Tuck, 973 F.2d at 376. The court therefore concludes that the plaintiff's anecdotal evidence is properly considered in the present analysis.

The plaintiff's claims of pretext are further supported by additional evidence. First, the plaintiff has testified that the problem for which she was fired, involving a bottle explosion, occurred on the lines on a daily basis. Supplemental Resp. to Mot. for Summ. J., Ex. None of the male coordinators had received disciplinary action as a result, however. Id. In addition, there was a significant delay between the incident that was the alleged motivation for the plaintiff's discharge and the discharge. In his deposition testimony, Jackson indicated that this was unusual. Id. When asked about the six weeks

---

[2]In her response, the plaintiff notes that these numbers are not intended to be "statistics," but are merely observations.

11

between the incident and the discharge, Jackson testified "[t]hat's investigation, you know, if it was six weeks, which I, you know, quite surprised .... I can't recall why it would ... why it would take six weeks." Id. Furthermore, the plaintiff testified that interviews of her crew, which led to a written warning, were not common among the crews of male coordinators. Id.

The court concludes that the evidence described above, in combination with the evidence of the plaintiff's job performance used to make her prima facie case, is sufficient that a reasonable jury could find that the plaintiff's discharge was motivated by discrimination. Dick has presented sufficient evidence to create a material dispute as to whether age or gender were more likely reasons for her dismissal than the poor job performance relied upon by Hood as the justification for discharge.

First, there is evidence from which the jury could find that Hood's proposed reason for discharge was false. The plaintiff has presented a number of evaluations of her job performance, including positive evaluations from around the time of her discharge. These evaluations, in combination with the evidence that the plaintiff's final warning and discharge were not completed in accordance with Hood's customary practice, could be found to specifically refute the defendant's proposed nondiscriminatory reasons for the plaintiff's discharge. Cf. Dejarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998) (concluding that the plaintiff's evidence of pretext failed to "specifically refute the facts").

The court does not infer invidious discrimination based solely on this evidence, however. The court also finds support in the plaintiff's anecdotal evidence concerning the change in gender and age makeup in the coordinator positions. Specifically, the plaintiff has testified in her deposition in support of her claim about the change in Hood's workforce, indicating that after the plaintiff was fired, the company had fifteen male coordinators younger than 40 and two female coordinators, whereas four years earlier, there were three female and two male coordinators. Furthermore, the plaintiff testified

12

that she knew of female applicants who had been denied the coordinator position. The court notes that the defendant has not presented any evidence in contradiction.

The court observes that the record and evidence before the court at this time is scarce. However, taking the available evidence in the light most favorable to the plaintiff, and drawing all inferences in the plaintiff's favor, the court concludes that there is sufficient evidence at this time to hold that a reasonable factfinder could conclude that Hood's justification for the plaintiff's discharge is pretextual, and that the plaintiff's discharge was based on age and/or gender discrimination. Therefore, the defendant's motion for summary judgment will be denied.

## CONCLUSION

For the reasons stated above, the court concludes that the plaintiff has presented evidence such that a reasonable jury could find that the plaintiff made out a prima facie case of age and gender discrimination, and that the defendant's asserted reasons for termination are pretextual. Therefore, the court concludes that the defendant's motion for summary judgment must be denied.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 13th day of June, 2007.

_____
United States District Judge

13

Case 5:06-cv-00104-GEC-BWC    Document 57    Filed 06/13/07    Page 13 of 13    Pageid#: 568